Rhonda FRATZKE, Appellant,

v.

Bernadette MURPHY, Appellee.

No. 98–SC–0684–DG.

Supreme Court of Kentucky.

Dec. 16, 1999.

Rehearing Denied March 23, 2000.

Charles A. Saladino, David Vance Oakes, Saladino Law Firm, Paducah, for Appellant.

Robert L. Prince, Prince & Brien, P.S.C., Benton, for Appellee.

Opinion of the court by Justice
JOHNSTONE.

Appellant, Rhonda Fratzke, appeals from a decision of the Court of Appeals reversing the Marshall Circuit Court in part and remanding. We affirm.

While walking a picket line, Fratzke was hit by a car driven by appellee, Bernadette Murphy, on December 3, 1992. Subsequently, Fratzke filed a complaint against Murphy. In the complaint, she alleged *inter alia:*

As a result of the negligence of the Defendants, Bernadette Murphy and Guard Screen, Company, Inc., the Plaintiff has been forced to incur hospital[,] doctor, medical and drug expenses in an amount in excess of One Thousand Dollars ($1,000.00) and will be forced to incur same in the future; she has undergone physical and mental pain and suffering and will be forced to undergo same in the future; she has suffered a permanent injury; and her ability to earn money has been permanently impaired; and she has been damaged thereby.

On August, 7, 1995, the trial court entered an order directing that trial briefs be filed at least twenty days prior to trial. The briefs were to contain an itemized list of the claimed special damages sought by the parties.

On October 4, 1995, Murphy served a set of interrogatories on Fratzke that included a request to identify "each item of damage, including pain and suffering, which you claim arises out of this action...." In response to the interrogatories, Fratzke provided only an itemized list of medical expenses incurred to date. Further, in her trial brief, Fratzke included only a list of medical expenses.

This trial commenced on December 27, 1995. During opening statements, Murphy's counsel objected to references made by Fratzke's attorney concerning damages other than those listed in Fratzke's interrogatory answers or in her trial brief. The trial court reserved its ruling on the issue and allowed Fratzke's attorney to continue his opening argument.

After closing arguments, Murphy's counsel objected to instructing the jury on any damages other than medicals. After noting Fratzke's failure to fully comply with the court's order concerning the trial brief or to fully answer Murphy's interrogatories, the trial court nonetheless overruled the objection stating that such a result was unduly harsh. The trial court

then submitted the case to the jury with instructions to award Fratzke damages that fairly and reasonably compensated her for: pain and suffering, medical expenses, future medical expenses, lost wages, and permanent impairment of power to labor and earn money. The jury returned with a verdict that awarded Fratzke $25,000 in pain and suffering, $33,513.62 for medical expenses, $12,000 for future medical expenses, $27,500 for lost wages, and $25,000 for permanent impairment of her power to labor and earn money. The trial court entered a judgment in accordance with this verdict on February 5, 1996.

The trial court denied Murphy's motion to "Alter, Amend, or Vacate Judgment; Alternative Motion for New Trial" on March 1, 1996. Subsequently, Murphy appealed to the Court of Appeals arguing in pertinent part that CR 8.01(2) precluded Fratzke from recovering damages for pain and suffering, future medicals, lost wages, and impairment of earning power because amounts for those unliquidated damages were not included in Fratzke's answers to interrogatories.

The Court of Appeals originally affirmed the trial court in full. Murphy sought discretionary review in this Court and we remanded the case to the Court of Appeals to reconsider its decision in light of *Burns v. Level*, Ky., 957 S.W.2d 218 (1997). Upon reconsideration, the Court of Appeals reversed the trial court's award of damages in question and remanded with instructions to vacate that portion of the judgment which awarded Fratzke damages for pain and suffering, future medicals, lost wages, and impairment of earning power. Fratzke then sought discretionary review of the second Court of Appeals' decision, which we granted. We affirm for the reasons set forth below.

CR 8.01(2) states:

In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court; provided, however, that all parties shall have the right to advise the trier of fact as to what amounts are fair and reasonable as shown by the evidence. When a claim is made against a party for unliquidated damages, that party may obtain information as to the amount claimed by interrogatories; if this is done, the amount claimed shall not exceed the last amount stated in answer to interrogatories.

■ Murphy propounded an interrogatory which requested Fratzke to identify "each item of damage, including pain and suffering, which you claim arises out of this action...." This clearly encompassed Fratzke's claims of damages for pain and suffering, future medicals, lost wages, and impairment of earning power as these claims were stated in the complaint. Further, these claims are clearly unliquidated damages within the meaning of CR 8.01(2). Fratzke did not object to this interrogatory, nor was her answer non-responsive since it provided a list of medical expenses incurred to date. By omitting an amount for any damage claim other than her medical expenses incurred to date, Fratzke effectively stated that her claim for her unliquidated damages was nothing. Thus, under the rule, Fratzke's claim for unliquidated damages at trial could not exceed $0.00.

Fratzke first tries to find safe harbor in CR 15.02, however, there is no place within the rule for her to weigh anchor.

CR 15.02 states in pertinent part:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that admission of such evidence would prejudice

him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

■ CR 15.02 only applies to *pleadings*. CR 7.01 sets forth an *inclusive* list of documents that constitute "pleadings" within the context of our civil rules. Further, the rule specifically provides: "No other pleading *shall* be allowed. . . ." (emphasis added). Interrogatories are not included within the CR 7.01 inclusive list of pleadings; thus, interrogatories are not "pleadings" within the meaning of the civil rules. Consequently, CR 15.02 has no application to the case at bar. This result is neither harsh nor hyper-technical. Fratzke had a simpler method of amending her claim for unliquidated damages that did not require Fratzke to make a motion to the trial court.

■ The language of CR 8.01(2) clearly implies that Fratzke had the right to supplement her answers to Murphy's interrogatories concerning her claims for unliquidated damages: ". . . the amount claimed shall not exceed the *last amount stated* in answer to interrogatories." (Emphasis added). If she did not have the right to supplement her answers, then the word "last" would have no meaning. While Fratzke does argue that she did in fact supplement her answers, the argument must fail.

The trial in this case began on December 27, 1995. During opening argument on the same day, Murphy's counsel objected to any mention of Fratzke's claims for unliquidated damages on grounds that CR 8.01(2) prohibited her from recovering on those claims. The trial court reserved ruling on the objection. On December 28, 1995, on the afternoon of the last day of trial, Fratzke filed with the court clerk supplemental answers to her interrogatories that provided monetary amounts for her unliquidated damage claims. We note that according to the supplemental answers, service was via the U.S. mail. Nothing in the record indicates that these sup-

plemental answers were served on or brought to the attention of the defense at any time during trial.

■ According to CR 26.05, when a party has a duty to supplement a response to a discovery request, the party must "seasonably" supplement the response. While CR 8.01(2) does not expressly place a duty on a party to supplement answers to interrogatories, it effectively creates such a duty by providing the consequence of failing to supplement. Thus, CR 8.01(2) and CR 26.05 may be fairly and reasonably construed together so as to impose a "seasonable" time limit on a party's ability to supplement an answer to interrogatories for claims for unliquidated damages. While CR 26.05 does not include a definition of "seasonable," we believe that, as a matter of law, any attempt to supplement answers to interrogatories after trial has commenced is not seasonable within the meaning of the rule. We note that nothing in the rules precludes a trial court from entertaining a motion to supplement answers to interrogatories after trial has commenced. However, Fratzke never made such a motion. Nor is there anything in the record to indicate that she in any way brought her supplemental answers to the attention of the trial court. Therefore, we hold that Fratzke's attempt to supplement her answers to interrogatories to include amounts claimed for unliquidated damages, which was made on the last day of trial and without leave of court, was ineffective.

■ Fratzke also argues that any error in admitting evidence of her claim of damages for pain and suffering, future medicals, lost wages, and impairment of earning power and instructing the jury on the same was harmless under CR 61.01. The basis of this argument is the assertion that Murphy was fully aware of Fratzke's claims for the damages in question. This argument might have merit if the purpose of CR 8.01(2) was to apprise a party of the *nature* of an opposing party's claims for

unliquidated damages. However, the purpose of the rule is to allow a party to discover the *amount* an opposing party is seeking for unliquidated damage claims. Since Fratzke provided no amount for her unliquidated damage claims through discovery, we cannot say that the error was harmless.

Finally, citing *Burns v. Level, supra,* Fratzke argues that the trial court had the discretion to overrule Murphy's objection to instructing the jury on unliquidated damages. The inclusion of language in *Burns* that the trial court did not abuse its discretion in granting the defendant a directed verdict on the plaintiff's unliquidated damages claim for permanent impairment to earn money was unfortunate. The' import of our decision in *Burns* is that CR 8.01(2) provides its own remedy and that implementation of that remedy is mandatory upon the trial court and is not discretionary. This is evidenced by our reliance in *Burns* on *National Fire Insurance Company v. Spain,* Ky.App., 774 S.W.2d 449, 451 (1989), which held that CR 8.01(2) prevents a trial court from awarding damages for unliquidated claims that are in excess of the last amount claimed by the plaintiff in answers to interrogatories.

▆ Contrary to the argument made by the dissent, our opinion today does not "bury a landmine in civil litigation." Rather, we merely hold that CR 8.01(2) means what it says. The language of the rule is mandatory and gives a trial court no discretion as to its application. The dissent argues that our reading of the rule "will inevitably lead to a miscarriage of justice, as in the instant case." However, as noted, Fratzke was free to seasonably supplement her answers. Further, after a seasonable time had expired, she could have moved the trial court to allow her to supplement her answers. She did neither. Therefore, applying the plain and ordinary meaning of the rule does not and will not create an "inflexible rule that will surely result in injustice." There are other safeguards in place to protect the interests of

fairness and justice without resorting to the dissent's tortured interpretation of the rule.

While the result in this case may seem harsh, it is required by the plain language of CR 8.01 and the holding of *Burns v. Level, supra.*

Therefore, the decision of the Court of Appeals is hereby affirmed.

COOPER, J., Special Justice SUSAN WESLEY McCLURE, STUMBO, J., and WINTERSHEIMER, J., concur.

LAMBERT, C.J., dissents by separate opinion, with KELLER, J., joining that dissent.

KELLER, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

GRAVES, J., not sitting.

LAMBERT, Chief Justice, dissenting.

I am now of the opinion that our decision in *Burns v. Level,* Ky., 957 S.W.2d 218 (1998), to the extent that it mandated the result here, was erroneous. I qualify my view because the precise holding in *Burns* was that the trial court did not abuse its discretion in granting a directed verdict upon the unitemized damages. Contrary to the assertion in the majority opinion, *Burns* did not hold that such a result should occur in every case.

It is widely acknowledged that our purpose in prohibiting recitation of sums alleged as damages in the prayer for relief is to prevent public notoriety of shocking, outrageous claims which may bear little relationship to the actual damages sustained. To accommodate a defendant, CR 8.01 authorizes the use of interrogatories to obtain disclosure of the amount actually sought. For failure to answer interrogatories, a party may move, under CR 37 .04, for an order compelling answers. No motion to compel was made in this case.

The effect of the majority opinion will be to bury a landmine in civil litigation where-

by a party may propound the interrogatories and thereafter sit silently by hoping the opposing party will, through inadvertence or neglect, fail to timely answer. A hard and fast rule prohibiting recovery of damages for failure to answer damages interrogatories will inevitably lead to a miscarriage of justice, as in the instant case. A far better approach would be to leave the remedy for failure to answer interrogatories to the sound discretion of the trial judge. The perspective of the trial judge with respect to analyzing prejudice, unfair surprise, and generally allocating responsibility is far superior to that of any appellate court. Unfortunately, we have abolished trial court discretion in this regard and announced an inflexible rule that will surely result in injustice.

KELLER, J., joins this dissenting opinion.

KELLER, Justice, dissenting.

I dissent because I believe that *Burns v. Level,* 957 S.W.2d 218 (1998), clearly and properly holds that the decision whether to grant a directed verdict with respect to plaintiffs' unitemized damages claims on the basis of CR 8.01(2) is a matter left to the discretion of the trial judge. Because the trial judge did not abuse this discretion, I would reverse the decision of the Court of Appeals and reinstate the original verdict.

Initially, I would note that the majority inconsistently gives decisive weight to the language of CR 8.01(2). With respect to alleged violations of this rule, the majority adopts a strict construction of the rule's language and concludes that "CR 8.01(2) provides its own remedy" which is found within the rule's language and is independent of whether defense counsel is actually

surprised. In contrast, in order to address Fratzke's contention that the supplemental interrogatory response filed with the trial court during trial satisfied CR 8.01(2), the majority feels the need to "import" language from CR 26.05[1] and clarify the rule's language by analyzing policy rationale behind CR 8.01(2). With respect to the sanction associated with CR 8.01(2), questions of what information the defense possessed and when they possessed it are irrelevant. The same is not true, however, according to the majority, when it explains the "last amount stated" language.

The last sentence of Section II of this Court's opinion in *Burns, supra,* where the court addressed the trial court's directed verdict on the plaintiffs' claim for permanent impairment to earn money, reads, in part: "... we cannot conclude that the trial court *abused its discretion* in granting a directed verdict dismissing Appellant's claim for those damages." *Burns, supra* at 221–22 (emphasis added). I agree with Chief Justice Lambert that this Court held in *Burns* that the trial court involved in that case did not abuse its discretion in granting a directed verdict based on Burns' failure to answer either the initial interrogatory or the supplemental interrogatory regarding itemization of unliquidated damages. The majority characterizes this language as "unfortunate." I disagree with this characterization and dissent from the majority opinion because I do not believe this language appeared in *Burns* as the result of some kind of accident. I feel that this Court discussed the trial court's discretion regarding whether or not to grant a directed verdict within the *Burns* opinion because it is relevant and important to the holding.

---

1. I would note that the majority cites to this rule despite the fact that nothing in the record demonstrates that Fratzke was "under a duty seasonably to supplement [her] response" as contemplated by the rule. CR 26.05. In fact, subsection (c) of CR 26 .05 supports the argument made in Chief Justice Lambert's dissent that Murphy should have filed a motion to

compel Fratzke to fully answer the interrogatory before utilizing CR 8.01(2) offensively:

(c) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses. CR 26.05.

Finally, I see nothing in the record which leads me to believe that Murphy was prejudiced by Fratzke's failure to itemize her claims for unliquidated damages. The pleadings filed in this case clearly gave notice to Murphy that pain and suffering, future medical expenses, lost wages, and permanent impairment of power to earn labor and money were issues within this case that Fratzke intended to litigate. Fratzke did provide documentation showing the extent of her claim for past medical expenses, and she bound herself to a maximum verdict of $50.000, and thereby gave Murphy notice of the total amount sought in unliquidated damages, when she stipulated the amount in controversy to prevent removal to federal court. *See, Cole v. Great Atlantic and Tea Co.,* 728 F.Supp. 1305, Note 2 (E.D.Ky.1990). Contrary to the statement in the majority opinion that "[t]he court entered a judgment in accordance with [the] verdict," a verdict was only entered for $50.000.00, not for the total amount apportioned to Murphy by the jury.

Although I write separately in dissent from Chief Justice Lambert, I wholeheartedly agree with his statements regarding the superior position of the trial judge to analyze and determine issues of this sort. Rules cannot think; judges can. It is for this that we should accord great discretion to trial judges in matters of this nature. I believe *Burns* acknowledges this by applying an abuse of discretion standard. Seeing no abuse of discretion on these facts, I would reverse the Court of Appeals.

LAMBERT, C.J., joins this dissent.