RENDERED:  OCTOBER 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1407-MR

SCOTT HAAS AND SHERI HAAS                                     APPELLANTS


APPEAL FROM WOLFE CIRCUIT COURT
v.            HONORABLE LISA HAYDEN WHISMAN, JUDGE
ACTION NO. 23-CI-00089


DENNIS SCOTT GRAHAM AND
KIMBERLY GRAHAM                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE:  Scott and Sheri Haas appeal the findings of fact and

conclusions of law entered by the Wolfe Circuit Court following a bench trial in

this dispute over a common roadway.  After careful review, we affirm the circuit

court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Haases own four tracts of land in Wolfe County, which they purchased in 2022. At least one tract is adjacent to the tract owned by Dennis and Kimberly Graham, who purchased their property in 2005. All of the tracts were previously owned by the family of James S. Brown. The Brown property was divided into 14 separate tracts in 1975. To that end, the Haases own tracts 7, 8, 9, and 11, and the Grahams own tract 10. When the land was divided in 1975, a surveyed plat was recorded in the Wolfe County Clerk's Office. The deeds for the tracts owned by the Haases and Grahams refer only to the plat and corresponding tract numbers for their legal descriptions and sources of title. At issue is a 30-foot-wide right-of-way depicted in the plat that runs from Kentucky Highway 191 to the 14 separate tracts.

According to the record before us, when the Grahams purchased their property in 2005, the property now owned by the Haases was owned by the Bush family. Dennis Graham testified that the Bushes had erected a gate on the roadway that was open when he bought the property, but soon after was kept closed and locked. However, Dennis testified the Bushes provided keys to him, his son Kevin Graham, and nephew Andrew Graham. Dennis testified that, before the Haases bought their land, Dennis and his family used the roadway several times a year to

access their property for hunting, fence maintenance, and care of their livestock, and that the roadway was always accessible.

In 2022, the Bushes sold their land to the Haases. After the purchase, the gate remained closed and locked, but Dennis was no longer able to unlock it with the keys he obtained from the Bushes. The Haases never provided a key to Dennis, and he could no longer access his tract via the roadway. Dennis admitted to putting up his own chains and locks on the gate twice, only to have them removed by the Haases. The Grahams filed the underlying lawsuit seeking a declaration of rights to their use of the roadway and an injunction forcing the Haases to remove any and all obstacles that prevent their use of the roadway. The Haases filed an answer, but did not make a claim of ownership to the roadway via adverse possession or under any other legal theory therein.

A bench trial was held. Dennis testified about his use of the roadway since 2005, and that he was never denied use or access and had a key to the gate. He stated he believed he received the key from Mike or Glen Bush, but could not recall when he received it. Kevin and Andrew testified to their use of the roadway to access the Graham property for hunting, fence maintenance, and cattle. Kevin stated he believed he used the roadway a couple of times per month and had a key to access the gate up until 2022. Andrew also stated that he had a key, but it stopped working when the Haases purchased the neighboring tract.

The Haases called Larry and Dorsie Bush, two of the prior owners of the Haas property, to testify. Both stated the gate had been up since 1978, and, to their knowledge, no keys had been given to anyone outside of the Bush family. Both stated they never saw the Grahams use or travel through the gate. Scott Haas testified the gate was there when he viewed the property before purchasing and it was his belief that he owned the property upon which the roadway passed, despite the plat.

The circuit court found the roadway was reserved to serve all 14 tracts and is not owned by the Haases. Although part of it appeared to be a county road in the plat, no conclusive evidence was presented regarding where the county road stopped or how often it was maintained. The circuit court found that, because the roadway was still used regularly, even if infrequently, by the Grahams, the Haases' argument that the Grahams abandoned use of the roadway was unavailing. The circuit court also ordered the Haases to remove any fences and/or gates. The Haases filed a motion to alter, amend, or vacate based on what they argued were mistakes in the circuit court's findings of fact. The circuit court denied the motion. This appeal followed.

## II. STANDARD OF REVIEW

The Haases make numerous arguments on appeal that center primarily on what they claim are the circuit court's erroneous findings of fact. "Appellate

review of a trial court's factual findings is governed by the clearly erroneous standard; factual determinations supported by substantial evidence will not be disturbed." *Legg v. Commonwealth*, 500 S.W.3d 837, 839 (Ky. App. 2016) (citation omitted). They also make several arguments related to the circuit court's conclusions of law. "The standard of review for conclusions of law is *de novo.*" *Commonwealth v. Bennett*, 553 S.W.3d 268, 271 (Ky. App. 2018) (citations omitted).

### III. ANALYSIS

The Haases contend the circuit court erred by 1) finding the roadway was not abandoned by the Grahams; 2) finding that blockage of the roadway began to occur in 2022 after the Haases purchased their property; 3) finding Dennis Graham had knowledge of use of the roadway to access his property prior to his purchase in 2005; 4) finding the Grahams utilized the roadway several times per year; and 5) ignoring the testimony of Larry and Dorsie Bush that the gate had been locked since 1978 and no keys had been given to the Grahams.

The Haases also argue the circuit court erred in its conclusions of law because the Grahams' nonuse coupled with exclusion from the roadway dating back to 1978 amounted to abandonment. They also assert the circuit court erred by ordering removal of the gate, chain, and lock.

Finally, the Haases request that we strike a portion of the Grahams' brief that includes responses to requests for admissions that were not admitted into evidence.

We begin by addressing the Haases' arguments regarding the circuit court's findings of fact, which center around conflicting testimony of witnesses. Witnesses for each side gave radically different time frames for how long the gate had been locked and who had keys. Dennis Graham testified the gate was there when he purchased his property in 2005, but it was never locked. He stated he could not remember when the Bushes started locking it, but when they did, he obtained keys from either Mike or Glen Bush and the Graham family had unfettered access to the roadway from 2005 until 2022. Testimony by Dennis, Kevin, and Andrew Graham was that they each used the roadway several times per year. Dennis also testified he believed his property was accessed for mining and timber via the roadway prior to 2005. On the other hand, Larry and Dorsie Bush testified the gate had been in place and locked since 1978, and the Bushes never gave keys to anyone, including the Grahams or their predecessors in title. Both Larry and Dorsie testified they had never seen any Graham family members using the roadway.

In the end, the circuit court's findings of fact were based simply on whose testimony it believed. "[D]ue regard shall be given to the opportunity of the

trial court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks and footnotes omitted). The circuit court clearly believed the Grahams and their witnesses regarding use of and access to the roadway. The circuit court also considered the plat entered into evidence that showed the roadway serving each of the 14 tracts. We cannot say the circuit court clearly erred in its findings of fact.

Moreover, *even if* the circuit court believed some or all of the testimony offered by the Haases and their witnesses, in the order denying the Haases' motion to alter, amend, or vacate, the circuit court also found that:

> [w]hat was of most importance to the Court in making its findings was that the 30-foot right-of-way was never deeded out when the original property owner divided up the land. The right-of-way was clearly reserved on the recorded plat. In each of the parties' deeds, there are no descriptions, just references to tracts. Kentucky Courts have held that dedication by plat is a common method of reserving property for public use. [*See*] *Cassell v. Reeves*, 265 S.W.2d 801, 802 (Ky. 1964). When a plat is recorded and subsequent deeds refer to the plat, the plat becomes part of the deeds. *Id.* The calls for each of the tracts in issue in the above-styled case fall outside of the dedicated right of way.

In other words, the roadway was never the Haases'—or Bushes' for that matter—to lock and/or obstruct, but it only became an issue in 2022 when the Grahams no longer had keys to the gate.

The Haases' remaining arguments focus on what they allege are errors in the circuit court's conclusions of law. In doing so, they are essentially making a claim for adverse possession. The Grahams argued the Haases failed to plead adverse possession and the circuit court recognized the failure in its order denying the Haases' motion to alter, amend, or vacate. However, we note that "[a] party may prove title by adverse possession under a general allegation of ownership, although adverse possession has not been specifically pleaded." *Bryant v. Bullock*, 218 S.W.2d 381, 382 (Ky. 1949). Nevertheless, the Haases failed to develop their adverse possession argument to this Court, and it must fail.

The Haases assert that the Grahams abandoned any claim to the roadway through nonuse and, coupled with acts of dominion (*e.g.*, installation of a locked gate) by the Bushes and then Haases, the nonuse amounts to abandonment (citing *Schade v. Simpson*, 173 S.W.2d 801 (Ky. 1943)). The Haases' argument is deficient in two ways: First, they fail to articulate how they satisfied the elements of adverse possession, which are: "1) possession must be hostile and under a claim of right, 2) it must be actual, 3) it must be exclusive, 4) it must be continuous, and 5) it must be open and notorious." *Appalachian Regional Healthcare, Inc. v. Royal Crown Bottling Co., Inc.*, 824 S.W.2d 878, 880 (Ky. 1992). Second, the circuit court specifically found that Graham had *not* abandoned use of the roadway until he was forced to do so in 2022. As previously stated, the circuit court clearly

believed testimony from the Grahams concerning use of the roadway and access to the gate via keys from 2005-2022. The Haases' adverse possession argument to this Court is simply a repackaging of their assertion that the circuit court erred in its findings of fact.

Finally, the Haases request we strike the fourth item included in the appendix of the Grahams' brief, which is a copy of the Haases' responses to requests for admissions. Kentucky Rule of Appellate Procedure ("RAP") 32(E)(1)(b) provides, in relevant part only, that "[t]he appendix may contain papers or exhibits in the appellate record to which ready reference may be considered by the appellant as helpful to the appellate court." The responses included in the appendix are found on pages 39-40 of the certified record before us. Therefore, we decline to strike that portion of the Grahams' brief. We do note that the information the Grahams attempted to draw to our attention in the responses to the requests for admissions was elicited upon cross-examination of Scott Haas at the bench trial, making the admissions redundant at best.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Wolfe Circuit Court is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEES: |
|---|---|
| John T. Aubrey<br>Mariah J. Aubrey<br>Manchester, Kentucky | Ira S. Kilburn<br>Salt Lick, Kentucky |
| | Rebecca Graham McCoy<br>Mt. Sterling, Kentucky |